IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 04-cv-02416-PSF-OES

DARRELL R. HARE,

 Plaintiff,

v.

DENVER MERCHANDISE MART, INC.,
DENVER MERCHANDISE MART EMPLOYERS, INC., and
AMERICAN REALTY INVESTORS,

 Defendants.

---

**ORDER ON DEFENDANT AMERICAN REALTY INVESTORS'
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
AND FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

---

THIS MATTER is before the Court on the Motion to Dismiss of Defendant American Realty Investors ("ARI") (Dkt. # 8), filed December 9, 2004. ARI moves the Court pursuant to F.R.Civ.P. 12(b)(1) to dismiss Mr. Hare's claim against it under the 1967 Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, for failure to exhaust administrative remedies and pursuant to F.R.Civ.P. 12(b)(2) for lack of personal jurisdiction. This case was originally filed in Adams County District Court on October 28, 2004, and timely removed to this Court on November 22, 2004 based on federal question jurisdiction.

**I. PLAINTIFF'S ALLEGATIONS**

This suit arises out of the termination of Mr. Hare's employment as the General Manager of Denver Merchandise Mart, Inc. ("DMM") on or about December 31, 2003.

Mr. Hare seeks damages and equitable relief against DMM, Denver Merchandise Mart Employers, Inc. ("DMME") and ARI for violating his rights under the ADEA and Colorado common law, which prohibits an employer from discharging an employee in violation of public policy.  Mr. Hare is a Colorado resident.  Complaint at 2, ¶ 2.

Defendant ARI is a corporation organized under the laws of Nevada with its headquarters in Texas, is not authorized to do business in Colorado and wholly owns DMM and DMME as its subsidiaries.  *See* Motion to Dismiss at 2-3.  Although ARI is apparently a corporation, neither Mr. Hare in the caption and in the initial averments of the complaint nor ARI in its submissions refer to it as having "corporation," "incorporation" or other indication of corporateness in its name as is generally required of corporations by law. Mr. Hare does refer to that defendant as "American Realty Investors, *Inc.*" at ¶ 11 of the Complaint.  (Emphasis added.)

Mr. Hare avers the following: he was employed as the General Manager of DMM for almost thirty years before he was fired on or about December 31, 2003.  Complaint at 2, ¶ 7.  During that span he assumed the position of President of DMM from about June 1992 until he resigned on January 2, 2003, retaining his General Manager position.  *Id.* at 2, ¶ 8.  DMM is owned by ARI, of which Gene Phillips is the majority shareholder.  *Id.* at 2, ¶ 3; EEOC Affidavit of Darrell R. Hare, attached to plaintiff's Response to Motion to Dismiss as Exhibit 4, at 1, ¶ 2; Affidavit of Darrell R. Hare, attached to plaintiff's Response to Motion to Dismiss as Exhibit 1, at 1, ¶ 3.  On December 29, 2003, Karl Blaha and Michael Lane, agents of ARI, traveled to Mr. Hare's office in Colorado and informed him that he was fired from his position as General

Manager of DMM, effective December 31, 2003.  *See* Affidavit of Darrell R. Hare at 1-2, ¶ 4.

Events leading to the cause of action began about two years prior to the actual termination of Mr. Hare's employment.  In December 2001, Mr. Phillips, via John Cook, directed Mr. Hare to delay DMM's employees' fourth quarter bonuses, which were eventually paid only after Mr. Hare challenged this directive.  *See* Complaint at 3, ¶ 14.  In March 2002, Mr. Hare was again directed to delay the first quarter bonuses, including his own, which were paid in May only after Mr. Hare consulted with DMM's attorneys and insisted the bonuses were legally due.  *Id.* at 3, ¶ 15-16.

On or about December 2, 2002, Mr. Hare attended a meeting at ARI offices in Texas with, among others, Messrs. Phillips, Cook and Blaha, which defendants stated was being held to discuss DMM's 2003 budget and the "modification" of the 1992 management agreement.  *Id.* at 3, ¶ 18.  This agreement guided DMM's operation and established, *inter alia*, Mr. Hare's authority over payroll and accounts payable.  *Id.* at 3-4, ¶ 12, 20.  Contrary to defendants' agents' representations, the meeting allegedly was actually about Mr. Hare's age and retirement plans.  *Id.* at 4, ¶ 19.  At the meeting Mr. Phillips asked Mr. Hare's age, and upon finding out that Mr. Hare was 63, directed Mr. Hare to find and train a younger replacement for his position as General Manager.  *Id.*  Defendants also eliminated entirely the 1992 agreement and informed Mr. Hare that there would be no new management agreement and that the new plan, which stripped Mr. Hare of much of his authority and bonuses, was non-negotiable.  *Id.* at 4, ¶ 20.

On January 2, 2003, defendants presented Mr. Hare with a proposed new "Sub

Management Agreement" that "greatly reduced Mr. Hare's authority, set unattainable revenue goals, and cut his total compensation by about 47 percent." *Id.* at 4, ¶ 21. As a result of the above actions, Mr. Hare resigned as President of DMM on January 2, 2003, although retaining his position as General Manager. *Id.* at 4, ¶ 22. The new agreement significantly decreased Mr. Hare's duties, revoked his authority to sign checks, and transferred his authority over payroll and accounts payable to ARI offices in Dallas, Texas. *Id.* DMM subsequently hired Ken Williams, a man in his mid-thirties, and Mr. Hare believes that Mr. Williams was hired to be his replacement, as Mr. Williams has assumed many general management duties for which Mr. Hare had previously been responsible. *Id.* at 4, ¶ 25.

During Mr. Hare's employment with DMM, he claims it was apparent to him that ARI continuously owned, participated in the operation of and sold several properties in Colorado, including and in connection with DMM. *See* Affidavit of Darrell R. Hare at 2, ¶ 5-6. Also during Mr. Hare's employment, ARI executives traveled to Colorado to check on the various business aspects of DMM, and Mr. Phillips' brother Don Phillips was responsible for taking care of renovation and major maintenance needs of DMM. *Id.* at 2, ¶ 7-8. Mr. Hare also exchanged significant correspondence with board members and officers of ARI regarding the operations of DMM during his employment. *Id.* at 2, ¶ 11. A significant number of ARI's Board of Directors and officers served as board members or as officers for DMM and its related entities. *Id.* at 2, ¶ 9. Moreover, ARI had the ultimate say in the financial issues and operations of DMM, as evidenced by Mr. Hare's meeting with ARI executives in ARI offices in Dallas, Texas on or about

December 2, 2002, in which those executives extinguished Mr. Hare's financial authority and significantly decreased his level of authority over the operations he previously controlled. *Id.* at 2, ¶ 10.

## II.  JURISDICTION

ARI moves the Court pursuant to F.R.Civ.P. 12(b)(1) to dismiss Mr. Hare's Complaint for failure to exhaust administrative remedies, and pursuant to F.R.Civ.P. 12(b)(2) for lack of personal jurisdiction.

### A.  Motion to Dismiss for Failure to Exhaust Administrative Remedies

ARI moves the Court to dismiss Mr. Hare's ADEA claim against it for failure to exhaust administrative remedies, which essentially constitutes a motion to dismiss pursuant to F.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. In considering a Rule 12(b)(1) challenge, a court has wide discretion to consider matters outside the pleadings to resolve disputed jurisdictional facts. *Holt v. U.S.*, 46 F.3d 1000, 1003 (10th Cir. 1995); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n. 5 (10th Cir.), *cert. denied*, 484 U.S. 986 (1987).

A plaintiff must exhaust the administrative remedies provided by the Equal Employment Opportunity Commission ("EEOC") before bringing a case to federal court. *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996), *cert denied*, 520 U.S. 1115 (1997). Failure to exhaust administrative remedies deprives a federal court of jurisdiction over a discrimination claim. *Id.* Requiring plaintiffs to go through the EEOC process before bringing a claim in federal court serves several purposes: 1) it allows the EEOC to investigate the claim; 2) it puts the employer on notice of the alleged violation;

and 3) it gives the EEOC an opportunity to conciliate the claim.  *See e.g., Seymore v. Shawyer & Sons, Inc.*, 111 F.3d 794, 799 (10th Cir.), *cert. denied*, 522 U.S. 935 (1997).

ARI argues that because it was not named as a respondent in the EEOC Charge of Discrimination filed by Mr. Hare the Court should dismiss this claim for lack of subject matter jurisdiction pursuant to F.R.Civ.P. 12(b)(1) because Mr. Hare failed to exhaust his administrative remedies.  *See* Motion to Dismiss at 3-4, ¶ 8.  However, the Tenth Circuit has ruled that an "omission of a party's name from the EEOC charge does not automatically mandate dismissal of a subsequent action under Title VII."  *Romero v. Union Pac. R.R.*, 615 F.2d 1303, 1311 (10th Cir. 1980).  In such cases the Tenth Circuit liberally applies the exhaustion requirements of the EEOC claims.  *See Foster v. Ruthrpumen, Inc.*, 365 F.3d 1191, 1195 (10th Cir. 2004) (stating that because the ADEA's stated purpose is to "prohibit arbitrary age discrimination in employment," courts should liberally construe charges of age discrimination filed with the EEOC).  In short, the main issue at hand is whether ARI had notice from Mr. Hare of the claim against it.  The Court believes ARI did have such notice.

Mr. Hare included enough information in his EEOC documents to properly notify ARI of the claim against it.  In Mr. Hare's affidavit he clearly refers to ARI as the owner of DMM and Mr. Phillips as the majority shareholder.  *See* EEOC Affidavit of Darrell R. Hare at 1, ¶ 2.  Mr. Hare further describes the age discrimination to which ARI's officers allegedly subjected him at a meeting called by ARI and held in ARI offices.  *Id.* at 2, ¶ 8.  In addition, Mr. Hare lists ARI as the office headquarters of DMM and names Mr. Lane as ARI's Vice President of Human Resources and the contact person for the company.

*See* EEOC Intake Questionnaire, attached to plaintiff's Response to Motion to Dismiss as Exhibit 5, at 2. That statement was made in response to the question: "If the employer has a separate Headquarters Office, please include the name and address, and telephone number, if known:".

ARI, relying heavily on an unpublished opinion, contends that the Court should look at only the formal charge when evaluating exhaustion requirements, and because ARI was not named in the formal charge, ARI was not on notice. *See* Defendant's Reply in Support of Motion to Dismiss at 17 citing *Welsh v. City of Shawnee*, 1999 WL 345597 **5 (10th Cir., June 1, 1999). However, *Welsh* is distinguishable on its facts because in that case the plaintiff's discrimination claims pointed solely at one individual defendant's actions, while her underlying charge stated that a completely different individual discriminated against her based on her gender. *Id.* at **3. In addition, the charge did not even mention the defendant in her federal action. *Id.* at **3. The district court there concluded that: "[b]ecause [the plaintiff's] harassment claims are based on completely different allegations from her gender discrimination claim, the two types of claims are not reasonably related." *Id.* In the present action, Mr. Hare's claims against the three defendants are interrelated. As the Tenth Circuit in *Welsh* recognized, "[a]llegations outside the body of the [EEOC] charge may be considered when it is clear that the charging party intended the agency to investigate the allegations." 1999 WL 345597 at **5. That appears to be the case here as to the alleged involvement of ARI in plaintiff's termination.

Other courts have held that a court may consider allegations outside the body of

the charge when it is clear that the charging party intended the EEOC to investigate the allegations or "where the conduct alleged would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made." *Martin v. Nannie & the Newborns, Inc.*, 3 F.3d 1410, 1416 n. 7 (10th Cir.1993); *see Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 502 (7th Cir. 1994). Mr. Hare's EEOC charge along with his contemporaneously filed affidavit and completed questionnaire put ARI on sufficient notice that it was a subject of his claims and gave ARI the chance to conciliate the claims, thereby exhausting his administrative remedies. Therefore, the Court has subject matter jurisdiction over ARI.

### B. Motion to Dismiss for Lack of *In Personam* Jurisdiction

ARI also moves the Court to dismiss Mr. Hare's complaint pursuant to F.R.Civ.P. 12(b)(2) for lack of personal jurisdiction. "The Plaintiff bears the burden of establishing personal jurisdiction over the defendant." *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988). When a district court rules on a F.R.Civ.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion. *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating "that the

presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985); *see also Rambo*, 839 F.2d at 1419 n. 6.

Mr. Hare bears the "light" burden of establishing jurisdiction and "need only make a *prima facie* showing that jurisdiction exists." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). This burden is met when the complaint alleges "sufficient facts to support a reasonable inference that defendant engaged in conduct described in the statute which subjects defendant to *in personam* jurisdiction." *Texair Flyers, Inc. v. District Court*, 506 P.2d 367, 369 (Colo. 1973). In deciding a motion to dismiss, "the allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir. 1990) (internal citation omitted). When the parties present conflicting affidavits, "all factual disputes are resolved in the plaintiff's favor and the plaintiff's *prima facie* showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.* (internal citation omitted); *see also Ten Mile Indus. Park v. Western Plains Serv.*, 810 F.2d 1518, 1524 (10th Cir. 1987).

### i.  Parties' Contentions and Undisputed Facts

Mr. Hare's complaint argues that the Court has personal jurisdiction over ARI because DMM and DMME (both wholly-owned subsidiaries of ARI) are Colorado corporations with their principal place of business in Adams County, Colorado. Complaint at 2, ¶ 3. Moreover, it suggests that the Court has jurisdiction because both the alleged unlawful employment practices and tortious acts by ARI agents were

committed within Colorado. *Id.* at 2, ¶ 4.

ARI responds that the Court does not have jurisdiction because merely owning subsidiaries in a state is not a sufficient basis to confer jurisdiction and does not satisfy Colorado's long arm statute, C.R.S. § 13-1-124. *See* Motion to Dismiss at 2, ¶ 5. ARI contends there is neither general nor specific jurisdiction over it for the following reasons: 1) ARI is a corporation organized under the laws of Nevada, not Colorado; 2) ARI is not authorized to do business in Colorado; 3) ARI maintains no business operations in Colorado; and 4) Mr. Hare was never an employee of ARI. *Id.* at ¶ 6. Moreover, ARI argues that Messrs. Lane and Blaha, who informed Mr. Hare that he was fired, were not "agents" of ARI. *See* Reply in Support of Motion to Dismiss at 2.

      **ii.**    **Colorado's Long Arm Statute**

Colorado's long arm statute, C.R.S. § 13-1-124(1), "extend[s] the personal jurisdiction of Colorado courts to their maximum limits permissible under the United States and Colorado Constitutions." *Scheuer v. District Court*, 684 P.2d 249, 250 (Colo. 1984). Colorado courts employ a two-pronged analysis in making jurisdictional determinations. *Wenz*, 55 F.3d at 1506-07. First, courts determine whether the exercise of jurisdiction is sanctioned by Colorado's long arm statute, and second, whether the exercise of jurisdiction comports with federal due process. *Id*, at 1507. While the initial inquiry is a question of state law, the second prong of the analysis is controlled by the Constitution. *Id.* As relevant here, Colorado's long arm statute sanctions Colorado courts to exercise jurisdiction over out-of-state defendants who (1) commit "a tortious act in the state" or (2) own, use or possess any real property situated

in the state and where the cause of action arises from such ownership, use or possession.  C.R.S. § 13-1-124(1)(b) and (c).

### a. Jurisdiction Exists Over ARI Pursuant to C.R.S. § 13-1-124(1)(b)

The tort provision of Colorado's long arm statute "implies the total act embodying both the cause and its effect." *Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, 235 (Colo. 1992) quoting *D & D Fuller CATV Const., Inc. v. Pace*, 780 P.2d 520, 524 (Colo. 1989).  As such, Colorado's long arm statute reaches both (1) tortious conduct occurring in Colorado and (2) tortious conduct resulting in injury in Colorado.  *See Wenz*, 55 F.3d at 1507.

Mr. Hare alleges that his discharge by ARI agents Messrs. Lane and Blaha was in a manner at least arguably in violation of Colorado's public policy, a tort claim recognized by the Colorado Supreme Court.  *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 111 (Colo. 1992) citing *Cronk v. Intermountain Rural Elec. Ass'n*, 765 P.2d 619 (Colo. Ct. App. 1988).  Thus, the exercise of jurisdiction here is authorized by Colorado's long arm statute.  C.R.S. § 13-1-124(1)(b).  Although ARI contends that Messrs. Lane and Blaha were not acting as its agents when they fired Mr. Hare, Mr. Hare states facts that on their face suggest an opposite conclusion, specifically averring to a meeting in Texas at ARI offices with ARI executives at which Mr. Blaha was present.  *See* EEOC Affidavit of Darrell R. Hare at 2, ¶ 8.  Mr. Phillips, who essentially directed Mr. Hare not to give out employee bonuses on two occasions, was also present at the meeting, and from this it could be inferred that ARI had control over DMM personnel decisions.  *See also* Affidavit of Darrell R. Hare at 2, ¶ 8.  Moreover, at this

11

meeting with ARI executives in ARI offices, Mr. Hare's authority was significantly decreased and Mr. Phillips questioned his age and retirement plans, suggesting further ARI control over Mr. Hare's employment.  *See* Complaint at 4, ¶ 19.  Given these representations that appear based on personal knowledge, Mr. Hare has made a *prima facie* showing that the Colorado long arm statute allows this Court to exercise personal jurisdiction over ARI.  *See* C.R.S. § 13-1-124(1)(b).

### b.  Jurisdiction Does Not Exist Over ARI Pursuant to C.R.S. § 13-1-124(1)(c)

Because personal jurisdiction may be had over ARI pursuant to C.R.S. § 13-1-124(1)(b), the Court need not reach the question of whether personal jurisdiction exists pursuant to subsection (c) of that same statute.

### iii.  Due Process

In addition to satisfying the state's long arm statute, a plaintiff must also fulfill the constitutional requirements found in the Due Process Clause of the Fourteenth Amendment to successfully establish personal jurisdiction over an out-of-state defendant.  *Wenz*, 55 F.3d at 1507.  "If jurisdiction is consistent with the due process clause, Colorado's long arm statute authorizes jurisdiction over a nonresident defendant."  *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004) quoting *Day v. Snowmass Stables, Inc.*, 810 F.Supp. 289, 291 (D. Colo. 1993).  Personal jurisdiction under the Due Process Clause may be either general or specific.  *See e.g., Wise v. Lindamood*, 89 F. Supp. 2d 1187, 1189 (D. Colo. 1999).  General jurisdiction is found when a defendant has "continuous and systematic contact with the state."  *Id*. Specific jurisdiction, on the other hand, "is predicated upon a defendant's minimum

contacts with the forum." *Id.* at 1190.  Under specific jurisdiction, "the touchstone inquiry is whether the defendant has purposefully directed its activities toward the forum jurisdiction." *Id.* (internal quotation marks omitted).  Mr. Hare contends the Court has specific jurisdiction over ARI.

### a.  Minimum Contacts

A defendant establishes minimum contacts with a forum state when he or she purposely avails himself or herself of the privilege of conducting activities within the forum state.  *Benton*, 375 F.3d at 1075.  Such activities are sufficient to establish minimum contacts if the defendant purposely directed his or her activities at residents of the forum, and a plaintiff's claim arises out of, or results from, actions by the defendant that create a substantial connection with the forum state.  *Id.*  Whether the defendant has the requisite minimum contacts must be decided on the particular facts of each case.  *Id.* at 1076 citing *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996).

The minimum contacts prong of the due process analysis is satisfied in this suit for at least two reasons: 1) Messrs. Lane and Blaha, as agents of ARI, purposely availed ARI to the consequences of acting in Colorado when they traveled from Texas to Colorado to terminate Mr. Hare's employment; and 2) Mr. Hare's cause of action arises from the wrongful discharge tort by ARI's agents in Colorado.  The following alleged facts further support the finding of minimum contacts between ARI and Colorado: ARI owns and controls DMM and other property in Colorado; ARI's board members and officers exercise significant control, including financial, over DMM and Mr.

Hare; ARI exchanged significant correspondence with Mr. Hare in Colorado regarding the operations of DMM; and ARI's board members visited Colorado periodically to supervise and check on DMM's activities.  ARI contends that these reasons do not establish minimum contacts with Colorado and that Messrs. Lane and Blaha were not acting as agents of ARI when they fired Mr. Hare.  *See* Defendant's Reply in Support of Motion to Dismiss at 8-11.  However, given the information above and even assuming *arguendo* that Messrs. Lane and Blaha were not acting as ARI's agents, ARI has established minimum contacts with Colorado.

### b. Fair Play and Substantial Justice

Even when a plaintiff has shown that a defendant has minimum contacts with the forum state, "the exercise of jurisdiction must not 'offend traditional notions of fair play and substantial justice.'"  *Wise*, 89 F. Supp. 2d at 1190 (internal citation omitted).  To determine whether the exercise of jurisdiction will offend traditional notions of fair play and substantial justice the Court looks at five factors: 1) the burden on the out-of-state party; 2) the forum state's interest in resolving the dispute; 3) the plaintiff's interest in receiving convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 5) the shared interest of the several states in furthering fundamental social policies.  *Benton*, 375 F.3d at 1078 citing *OMI Holdings*, 149 F.3d at 1092.

Facts such as ARI's active ownership of companies and of land in Colorado and the indication of its control of DMM policies and employees in Colorado suggest that ARI could reasonably anticipate being "haled to court" here, s*ee World-Wide*

*Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), and that the burden on ARI of litigating in Colorado would not be excessive.  The second factor also weighs in favor of Mr. Hare because Colorado has an interest in this case to ensure that one of its citizens is not discriminated against by an out-of-state defendant.  Mr. Hare's interest in adjudicating this action in Colorado is great because not only is he a resident of Colorado, but adjudication elsewhere could be financially burdensome to him.

The fourth factor also weighs in Mr. Hare's favor.  Although ARI contends that only two of the six named witnesses are in Colorado, and that the controversial meeting and the decision to terminate Mr. Hare's employment took place in Texas, *see* Defendant's Reply in Support of Motion to Dismiss at 13, the interstate judicial system's interest will be better served in Colorado because most of the documents and DMM's employees who can testify to the facts surrounding this action are located in Colorado.  *See* Plaintiff's Response to Defendant's Motion to Dismiss at 10.  The out-of-state location of some of the material witnesses would likely be insufficient to mandate transfer of this case to another district pursuant to 28 U.S.C. § 1404(a), much less deprive this Court of *in personam* jurisdiction over ARI.  Moreover, the meeting and the decision to terminate Mr. Hare's employment are not the cause of action in this claim, it is the actual termination, which took place in Colorado, that is at the heart of this claim.  *See* Complaint at 1-2, ¶ 1.  Therefore, the Court's exercise of jurisdiction over ARI is consistent with "traditional notions of fair play and substantial justice.  *OMI Holdings, Inc.*, 149 F.3d at 1091 citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

On the basis of the documents and affidavits before it, which detail ARI's contacts with Colorado and the alleged injuries stemming from those contacts and which the Court accepts as credible, the Court may properly exercise personal jurisdiction over ARI.

### III.   FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

To date, ARI has not filed a motion to dismiss pursuant to F.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. However, it addresses this issue indirectly in its motion by attacking the employment relationship (or lack thereof) between ARI and Mr. Hare. *See* Defendant's Reply in Support of Motion to Dismiss at 1, 18. Given that defendant raised the issue implicitly, the Court will address it now.

The ADEA prohibits an "employer" from taking adverse employment action against an employee because of the employee's age. 29 U.S.C. § 623(a)(1). To impose ADEA liability on a defendant the plaintiff must demonstrate that the defendant is an "employer" within the meaning of the statute. *See e.g.* 29 U.S.C. § 630(f) (ADEA defines "employee" as "an individual employed by any employer."); *Oestman v. National Farmers Union Ins. Co.*, 958 F.2d 303, 303-04 (10th Cir. 1992) (affirming the district court's conclusion that "it did not have subject matter jurisdiction over [the plaintiff's] claim because he was ... not an employee for the purposes of the ADEA."); *Palmer v. Arkansas Council on Econ. Educ.*, 154 F.3d 892, 895 (8th Cir. 1998); *Deal v. State Farm County Mut. Ins. Co.*, 5 F.3d 117, 118 n. 2 (5th Cir. 1993) (stating that in order to impose liability on a defendant employer "there must be an employment relationship between the plaintiff and the defendant"); *Thomason v. Prudential Ins. Co. of America*,

866 F. Supp. 1329, 1333-34 (D. Kan. 1994) (interpreting Tenth Circuit law). The Tenth Circuit has applied the following four factors to determine whether two entities should be considered as one defendant in employment discrimination actions: (1) interrelated operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership. *See Lambertsen v. Utah Dep't of Corrections*, 79 F.3d 1024, 1029 (10th Cir.1996) (single employer issue under Title VII); *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362 (10th Cir.1993) (addressing whether a parent company is liable for the actions of its subsidiary under Title VII and ADEA).

ARI contends that Mr. Hare has failed to make a claim for relief because: 1) ARI was never Mr. Hare's employer; and 2) Mr. Hare has nowhere affirmatively "asserted or alleged that ARI was his employer." Defendant's Reply in Support of Motion to Dismiss at 1. Indeed, Mr. Hare never expressly avers in his complaint that ARI was his employer, although he does specifically name others as such. *See* Complaint at 1-2, ¶¶ 1, 7-9; Plaintiff's Response to Defendant's Motion to Dismiss at 1, 13.

Given the dearth of factual averments by Mr. Hare to demonstrate an employment relationship between him and ARI, the claims against ARI are insufficient under *Lambertsen*, and thus must be dismissed for failure to state a claim upon which relief can be granted. As such, Mr. Hare shall have up to and including July 6, 2005 to file an amended complaint with factual averments sufficient to demonstrate an employment relationship between himself and ARI so as to render ARI directly liable to him under an ADEA claim.

**IV.   CONCLUSION**

For the reasons stated above, the Court hereby DENIES Defendant American Realty Investors' Motion to Dismiss (Dkt. # 8), filed December 9, 2004.  However, "American Realty Investors" is dismissed as a party defendant for failure to state a claim against it pursuant to F.R.Civ.P. 12(b)(6).  Mr. Hare shall have up to and including July 6, 2005 in which to file an amended complaint with allegations sufficient to demonstrate an employment relationship between himself and ARI.

DATED:  June 22, 2005

BY THE COURT:

s/ Phillip S. Figa
_____
Phillip S. Figa
United States District Judge