IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 04-cv-02416-PSF-OES

DARRELL R. HARE,

    Plaintiff,

v.

DENVER MERCHANDISE MART, INC.,
DENVER MERCHANDISE MART EMPLOYERS, INC., and
AMERICAN REALTY INVESTORS,

    Defendants.

## ORDER ON MOTION TO DISMISS PARTY

THIS MATTER is before the Court on defendant American Realty Investors' Motion to Dismiss Party (Dkt. # 38), filed July 18, 2005. American Realty Investors ("ARI") moves the Court pursuant to F.R.Civ.P. 12(b)(6) and/or F.R.Civ.P. 56 to dismiss Plaintiff Darrell Hare's claim against it under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, for failure to establish that ARI was an "employer" within the meaning of § 630(f) of the ADEA, and thus failing to state a claim under the ADEA against ARI. Mr. Hare filed a Response on August 15, 2005 (Dkt. # 45), and ARI filed its Reply on October 18, 2005 (Dkt. # 65).

**I.    BACKGROUND AND PROCEDURAL HISTORY**

This suit arises out of the termination of Mr. Hare's employment as the General Manager of Denver Merchandise Mart, Inc. ("DMMI") on or about December 31, 2003. Mr. Hare seeks damages and equitable relief against DMMI, Denver Merchandise Mart

Employers, Inc. ("DMME") and ARI for violating his rights under the ADEA and Colorado common law, which prohibits an employer from discharging an employee in violation of public policy. *See* Pl.'s Am. Compl. (Dkt. # 36).

Defendant ARI is a corporation headquartered in Dallas, Texas, while its subsidiaries, DMMI and DMME, are headquartered in Denver, Colorado. *See* Def.'s Mot. to Dismiss at 5.

The factual background of the case is set forth in detail in an Order in this case dated June 22, 2005 (Dkt. # 35), denying an earlier motion to dismiss by ARI. 2005 WL 11475339. In that motion, the Court rejected ARI's challenge to personal jurisdiction, but raised *sua sponte* the issue of ARI's lack of employer status as pled and permitted Mr. Hare to file an amended complaint with additional allegations to demonstrate an employment relationship between himself and ARI.

Mr. Hare filed the Amended Complaint on July 6, 2005 (Dkt. # 36). In it, he asserts that ARI is a joint employer along with DMMI and DMME and that ARI meets the standard for holding a parent corporation liable for the acts of its subsidiary by virtue of its interrelated operations, centralized control of labor relations, common management, common ownership and financial control. *See* Pl.'s Am. Compl. at 3-6 (citing *Frank v. U.S. West, Inc.*, 3 F.3d 1357 (10th Cir. 1993)). ARI responded to the Amended Complaint with the Motion to Dismiss currently before the Court, challenging Mr. Hare's assertions and including several exhibits in support of its position. Mr. Hare's Response included his own affidavit, attesting to the facts he alleges create an employment relationship between himself and ARI.

## II.     STANDARDS OF REVIEW

ARI moves the Court pursuant to Rules 12(b)(6) and/or 56 of the Federal Rules of Civil Procedure to dismiss Mr. Hare's Amended Complaint against it because ARI was not his "employer" within the meaning of the ADEA.  Def.'s Mot. to Dismiss at 1. Under Rule 12(b), if "matters outside the pleading are presented to and not excluded by the court," a Rule 12(b)(6) motion may be treated as a motion for summary judgment under Rule 56.  Because both parties have included such outside matters in their pleadings, and because ARI specifically styled its motion as one pursuant to Rule 12(b)(6) "and/or" Rule 56, the Court will treat the instant motion as falling under the latter, and use the appropriate summary judgment standard.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When applying this standard, the Court reviews the pleadings and the documentary evidence in the light most favorable to the nonmoving party.  *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir. 1988).  To defeat a properly supported motion for summary judgment of the defendant, "there must be evidence upon which the jury could reasonably find for the plaintiff." *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995), *cert. denied*, 516 U.S. 1160 (1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  In addition, "'where the non-moving party will bear the burden of proof at trial

on a dispositive issue' that party must 'go beyond the pleadings' and 'designate specific facts' so as to 'make a showing sufficient to establish the existence of an element essential to that party's case' in order to survive summary judgment." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 322).

### III.   ANALYSIS

The ADEA prohibits an "employer" from taking adverse employment action against an employee because of the employee's age. 29 U.S.C. § 623(a). As indicated in this Court's June 22, 2005 Order, to impose ADEA liability on a defendant the plaintiff must demonstrate that the defendant is an "employer" within the meaning of the statute. 2005 WL 1475339 at *8, citing 29 U.S.C. § 630(f) (ADEA defines "employee" as "an individual employed by any employer."); *Oestman v. National Farmers Union Ins. Co.*, 958 F.2d 303, 304-05 (10th Cir. 1992) (affirming the district court's conclusion that "it did not have subject matter jurisdiction over [the plaintiff's] claim because he was an independent contractor and not an employee for the purposes of the ADEA."); *Palmer v. Arkansas Council on Econ. Educ.*, 154 F.3d 892, 895 (8th Cir. 1998); *Deal v. State Farm County Mut. Ins. Co.*, 5 F.3d 117, 118 n.2 (5th Cir. 1993) (stating that in order to impose liability on a defendant employer "there must be an employment relationship between the plaintiff and the defendant"); *Thomason v. Prudential Ins. Co. of America*, 866 F. Supp. 1329, 1333-34 (D. Kan. 1994) (interpreting Tenth Circuit law).

Also as previously noted, the Tenth Circuit has applied the following four factors

to determine whether two entities should be considered as one defendant in employment discrimination actions: (1) interrelated operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership. 2005 WL 1475339 at *8, citing *Lambertsen v. Utah Dep't of Corrections*, 79 F.3d 1024, 1029 (10th Cir.1996) (single employer issue under Title VII); *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362 (10th Cir.1993) (addressing whether a parent company is liable for the actions of its subsidiary under Title VII and ADEA).

ARI contends that Mr. Hare has note met the required employment relationship because he "has failed to establish a nexus between" ARI, the parent corporation, and and Mr. Hare's actual employers, ARI subsidiaries DMMI and DMME. Def.'s Mot. to Dismiss at 1. ARI cites *Frank* for the proposition that "limited liability creates a strong presumption that a parent company is not the employer of its subsidiary's employees" and "extraordinary circumstances" are required to rebut this presumption. *Id.* at 3 (quoting *Frank*, 3 F.3d at 1362). ARI discusses the same factors cited by Mr. Hare in his Amended Complaint–interrelation of operations, centralized control of labor relations, common management, and common ownership or financial control–but concludes that these factors militate against finding ARI to be an employer within the meaning of the ADA.

The Tenth Circuit in applying the four factors as set out in *Frank* has found the third factor–centralized control of labor relations–to be "highly determinative," with the critical question being "[w]hat entity made the final decisions regarding employment matters relating to the person claiming discrimination?" *Florez v. Holly Corp.*, 2005 WL

3047965, *1 (10th Cir. Nov. 15, 2005) (quoting *Frank*, 3 F.3d at 1363); *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1070 (10th Cir. 1998) (same). In essence, who ultimately fired the plaintiff?

Mr. Hare asserts that two ARI executives, Michael Lane (of ARI Human Resources) and Karl Blaha (ARI's President) terminated his employment after traveling to Denver from Texas, ARI's headquarters. Hare Aff. at 3, attached as Ex. 1 to Pl.'s Resp. ARI responds that Mr. Blaha was working in his capacity as DMME President when he fired Mr. Hare. Def.'s Mot. to Dismiss at 9 and Ex. A-15 attached thereto, Blaha Aff. at 1-2. This position was apparently filled by Mr. Blaha after Mr. Hare's resignation as President following the presentation to Mr. Hare of a "Sub Management Agreement" which significantly reduced his authority and compensation. *See* Pl.'s Am. Compl. at 9-10. Mr. Lane, according to ARI, accompanied Mr. Blaha as a human resources adviser "solely to quell the anticipated nature of [the termination] discussion." Def.'s Mot. to Dismiss at 9-10.

These assertions taken together are insufficient to mandate summary judgment for ARI in this case, where a reasonable jury could conclude that the two men, who were also ARI executives, were working at least to some extent in their ARI capacities in connection with Mr. Hare's termination. Moreover, ARI's primary argument for denying control over its subsidiaries is that Mr. Hare himself exercised such control. *See* Def.'s Mot. to Dismiss at 12; Def.'s Reply at 13. According to ARI, Mr. Hare's "voluntary relinquishment of his corporate positions created the unprecedented scenario and placed Mr. Blaha . . . [as] successor as president of DMMI and DMME, in

the unenviable position of being the *only* official possessing the authority to terminate Plaintiff's employment." Def.'s Reply at 14 (emphasis in original). Mr. Hare's erstwhile control over the Denver Merchandise Mart did not preclude ARI from exercising control over Mr. Hare while he was in his position as General Manager of the Merchandise Mart, and does not conclusively refute the scenario that ARI made the final decisions regarding Mr. Hare's employment status. Further, Mr. Hare's "relinquishment" of DMMI and DMME corporate duties does not alter whether or not ARI controlled its subsidiaries to a sufficient degree to be considered an "employer" for purposes of the ADA.

Finally, ARI's attached exhibits do not as a matter of law completely negate the plausibility of Mr. Hare's allegations, supported by his sworn affidavit, that ARI "consolidated all of the proceeds from the properties it owned;" that "[m]ost of ARI's properties were covered by the same blanket insurance policy;" that "ARI had final authority on all major purchases over $2,500" by Denver Merchandise Mart; and that Mr. Hare "consistently consulted with ARI executives to review and discuss Denver Merchandise Mart's financial operations and other business plans." Hare Aff. at 1, 2, 3, 4, attached as Ex. 1 to Pl.'s Resp. ARI's Reply cites to deposition testimony that it characterizes as providing "great detail to explain" ARI's, DMME's, and DMMI's corporate structure. Def.'s Reply at 12. However, the cited and attached testimony merely asserts that "[t]his is just the way stuff is in the real estate business." *Id.* (citing Redwine Dep. at p. 21:14-22, attached as Ex. B). This hardly sheds light onto what appears to be a complicated relationship among the corporate entities, as well as

between ARI and Mr. Hare. A genuine issue as to a material fact–ARI's relationship with Mr. Hare and with DMMI and DMME–exists, making summary judgment inappropriate.

## IV. CONCLUSION

For the reasons stated above, the Court hereby DENIES Defendant American Realty Investors' Motion to Dismiss Party (Dkt. # 38), filed July 18, 2005.

DATED: December 12, 2005

BY THE COURT:

*s/ Phillip S. Figa*
_____
Phillip S. Figa
United States District Judge