IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 04-cv-02416-PSF-OES

DARRELL R. HARE,

    Plaintiff,

v.

DENVER MERCHANDISE MART, INC.,
DENVER MERCHANDISE MART EMPLOYERS, INC., and
AMERICAN REALTY INVESTORS,

    Defendants.

---

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

---

This matter is before the Court on Defendants' Motion for Summary Judgment (Dkt. # 72), filed November 10, 2005. Plaintiff Darrell Hare filed a Response on January 3, 2006 (Dkt. # 86), and defendants filed their Reply on February 1, 2006 (Dkt. # 92). The Court determines that oral argument will not be of material assistance.

**I. BACKGROUND AND PROCEDURAL HISTORY**

This suit arises out of the termination of Mr. Hare's employment as the General Manager of Denver Merchandise Mart, Inc. ("DMMI") on or about December 31, 2003. Mr. Hare seeks damages and equitable relief against DMMI, Denver Merchandise Mart Employers, Inc. ("DMME") and American Realty Investors ("ARI") for violating his rights under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and Colorado common law, which prohibits an employer from discharging an employee in violation of public policy. *See* Pl.'s Am. Compl. (Dkt. # 36). Subject matter

jurisdiction is based upon this Court's federal question jurisdiction over Mr. Hare's ADEA claim pursuant to 28 U.S.C. § 1331 and upon its supplemental jurisdiction under 28 U.S.C. § 1367 over the state claim.

This Court denied both a first motion to dismiss by ARI for lack of personal jurisdiction by Order dated June 22, 2005 (Dkt. # 35), and a second motion to dismiss based on ARI's status as an employer on December 12, 2005 (Dkt. # 83). The operative facts are largely undisputed and revolve around two key incidents–a dispute about paying bonuses and a meeting on December 3, 2002 at which Mr. Hare's age and retirement plans were discussed, as summarized below.

Defendant ARI is a corporation headquartered in Dallas, Texas, while its subsidiaries, DMMI and DMME, are headquartered in Denver, Colorado. Mr. Hare was employed in Denver as the General Manager of the Denver Merchandise Mart ("Mart"). He was terminated at age 64 after nearly 30 years at the Mart on December 29, 2003.

Prior to his termination, Mr. Hare and John Cook, "Hare's boss at the time of his termination" (Pl.'s Resp. at 3), disagreed about the payment of bonuses at the Mart. In December of 2001, Mr. Cook called Roger Klein, the Mart's Controller, and informed him that bonuses were no longer to be paid according to the current bonus structure in place. Instead, 2002 bonuses for Mart employees would be calculated according to a different system in use by the Dallas operations. Mr. Hare, after being informed by Mr. Klein of this conversation, resisted any change, contending that the bonuses in question were vested and owing, and therefore the change would violate Colorado law. The bonus dispute is memorialized in several letters back and forth between Mr. Hare

and Mr. Cook, and resulted in Mr. Hare issuing bonuses he had originally been directed by Mr. Cook not to pay.

In December of 2002, Mr. Hare and Mr. Klein attended a meeting in Dallas with Mr. Cook as well as other management representatives of defendants. According to notes created later by Mr. Hare, Gene Phillips, the controlling shareholder in the companies that own and operate the Dallas management operations (Defs.' S.J. Br. at 9), brought up the implementation of a new bonus system for Mr. Hare and Mr. Klein and the cancellation of the current bonus system. Although the exact discussion is unclear, Mr. Hare voiced some concern with the change. *See* Hare Dep. at 106:10-107:3. Mr. Hare's notes also characterized Mr. Phillips as responding angrily that there would be no management contract as had been historically in place, and reminding Mr. Hare that he was just an employee of theirs. *See* Hare Dep. at 114:14-116:10 (citing to Notes, attached as Ex. 10 to Defs.' S.J. Br.). Mr. Phillips then inquired into Mr. Hare's age, retirement plans, and succession plans as far as a new, younger General Manager at the Mart. Mr. Hare indicated that he did not have plans to retire.

The following month, Mr. Klein resigned his position as Controller of the Mart, and Mr. Hare resigned his corporate positions with DMMI, DMME and Valley Corporation, an entity holding the liquor license for the Mart. However, he continued on in his duties as General Manager of the Mart for nearly a year until he was terminated without warning and without severance pay on December 29, 2003. Although his base salary during 2003 remained unchanged, his total compensation was reduced by almost half, owing largely to changes in the bonus program that were

eventually implemented.

Prior to plaintiff's termination, Lisa Fogg was hired in July 2003 to serve as the new Controller for the Mart. She reported various accounting discrepancies to Mr. Cook, such as excessive payroll advances and vacation payouts that were contrary to company policy. She also reported that Mr. Hare kept loose hours, coming in late and leaving early. Mr. Hare disputes this allegation. Mr. Cook concluded Mr. Hare was actually doing very little as far as day to day operation of the Mart. Following Mr. Hare's termination, the position of General Manager was abolished and the duties were assumed by Mr. Cook, who began working one to two days a week in Denver.

Mr. Hare contends that his termination constituted age discrimination and wrongful discharge for refusal to follow directives in violation of the Colorado Wage Act, C.R.S. § 8-4-101 *et seq*. *See* Pl.'s Resp. at 1-2. Defendants claim that Mr. Hare was fired for justifiable reasons and that he has "failed to make a viable claim for either discrimination in violation of the Age Discrimination in Employment Act or under Colorado common law for refusing directives that would have purportedly violated the Colorado Wage Act." Defs.' S.J. Br. at 12, ¶¶ 20-21.

## II. STANDARD OF REVIEW

Summary judgment is appropriate under F.R.Civ.P. 56(c) if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). When applying this

standard, a court reviews the pleadings and the documentary evidence in the light most favorable to the nonmoving party. *See Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir. 1988). To defeat a properly supported motion for summary judgment, "there must be evidence on which the jury could reasonably find for the" nonmoving party. *Panis v. Mission Hills Bank*, *N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995), *cert. denied*, 516 U.S. 1160 (1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). In addition, "'where the nonmoving party will bear the burden of proof at trial on a dispositive issue' that party must 'go beyond the pleadings' and 'designate specific facts' so as to 'make a showing sufficient to establish the existence of an element essential to that party's case' in order to survive summary judgment." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 322).

### III. ANALYSIS

#### A. ADEA Claim

The ADEA prohibits an employer from taking adverse employment action against an employee because of the employee's age. 29 U.S.C. § 623(a). A plaintiff may offer either direct or circumstantial evidence to show illegal discrimination by an employer. *See Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir.), *cert. denied*, 531 U.S. 876 (2000). Direct evidence is used by "establishing proof of 'an existing policy which itself constitutes discrimination.'" *Id.* (quoting *Ramsey v. City & County of Denver*, 907 F.2d 1004, 1008 (10th Cir. 1990), *cert. denied*, 506 U.S. 907 (1992)). Here, plaintiff offers no proof of a discriminatory policy, but instead points to comments by Mr. Phillips

relating to Mr. Hare's age and the hiring of a younger person to groom as a successor to Mr. Hare. *See* Phillips Dep. at 65:6-67:9, Ex. 7 to Pl.'s Resp. (describing comments); Hare Dep. at 150:23-151:8, Ex. A to Defs.' Reply (explaining basis for age discrimination claim). Such statements at most constitute circumstantial evidence of discrimination. *See Stone*, 210 F.3d at 1136-37 (describing circumstantial evidence and providing examples). Therefore, Mr. Hare "must turn to the indirect method of proof established by *McDonnell Douglas*."[1] *Id*. at 1137.

The burden-shifting method set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973), requires a plaintiff to establish a *prima facie* case of wrongful termination by showing that (1) he belongs to a protected class; (2) he was qualified for his job; (3) despite such qualifications he was discharged; and (4) the job was not eliminated after his discharge. *See Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1165 (10th Cir. 2000) (applying the *McDonnell Douglas* framework to an ADEA claim). If the plaintiff establishes such a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the discharge. *Id*. Once a defendant has met this burden, a plaintiff "can avoid summary judgment only if he is

---

[1]*Stone* does cite to *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 560 (10th Cir. 1996) for the contrary position of allowing a plaintiff to prove his case directly using circumstantial evidence, and avoid the *McDonnell Douglas* burden-shifting analysis. *Stone*, 210 F.3d at 1137. Although plaintiff cites *Greene* for the same proposition, he nonetheless appears to follow the *McDonnell Douglas* analysis in attempting to prove his case. *See* Pl.'s Resp. at 16, 17 (discussing *prima facie* case and burden-shifting). Further, although *Greene* apparently remains good law, *Stone* is a more recent pronouncement of Tenth Circuit law and mandates that "[u]pon concluding that [plaintiff] has not presented direct evidence, we must turn to the indirect method of proof established by *McDonnell Douglas*." 210 F.3d at 1137. Therefore, the Court evaluates Mr. Hare's claim under the *McDonnell Douglas* approach.

able to show that a genuine dispute of material fact exists as to whether the defendant's articulated reason was pretextual." *Id.* (internal brackets omitted).

Defendants do not challenge the first three elements of plaintiff's *prima facie* case, but contend that he cannot meet the fourth element. Plaintiff does not dispute the deposition testimony offered by Mr. Cook that the General Manager position was eliminated after his discharge. *See* Cook Dep. at 283:7-284:5. Rather, Mr. Hare contends that "courts have modified the standard fourth *prima facie* element of the *McDonnell Douglas* construct . . . by requiring the plaintiff to 'produce evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.'" Pl.'s Resp. at 16 (quoting *Branson v. Price River Coal Co.*, 853 F.2d 768, 771 (10th Cir. 1988); *Lucas v. Dover Corp., Norris Div.*, 857 F.2d 1397, 1401 (10th Cir. 1988); *Ingels v. Thiokol Corp.*, 42 F.3d 616, 621 (10th Cir. 1994)). The three cases cited by plaintiff all involved a reduction in force by defendants,[2] a circumstance not present here. In those cases, plaintiffs could state a *prima facie* case by producing evidence to support a finding that the employer intended to discriminate in reaching the decision at issue, such as showing that the plaintiff was treated less favorably than younger employees during the force reduction. *E.g., Branson*, 853 F.2d at 771. There is no younger employee to serve as a comparison in this case.

---

[2]Where a plaintiff is terminated as part of a reduction in force, the fourth *prima facie* element may "be established through circumstantial evidence that the plaintiff was treated less favorably than younger employees during the reduction-in-force" rather than by proof that the plaintiff's former position was not eliminated. *Lucas*, 857 F.2d at 1401.

-7-

Further, "[t]he critical *prima facie* inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000) (internal quotation marks omitted). Thus, Mr. Hare must provide evidence that the decision to fire him in December 2003 and to eliminate the General Manager position could be viewed as constituting unlawful age discrimination based on Mr. Phillips's questions from December 2002. Viewing the evidence in the light most favorable to Mr. Hare, there is no genuine issue of material fact that could support an inference of unlawful discrimination in these circumstances. Here, Mr. Hare himself resigned his corporate positions following his dispute with Mr. Phillips regarding bonuses and management contracts, Mr. Cook traveled to Denver to support Mr. Hare and encourage his continued management of the Mart (*see* Cook Dep. at 260:12-261:7), and more than twelve months elapsed between the single incident relating to age and the ultimate decision to fire Mr. Hare. The allegedly ageist remarks themselves, even as described by Mr. Hare, show a desire for long-term planning and not a belief by Mr. Phillips that plaintiff was too old to continue working. *See* Hare Dep. at 117:3-119:24; 123:5-125:21; Notes, Ex. 10.

Even assuming *arguendo* for purposes of summary judgment that the elimination of the General Manager position is materially analogous to a reduction in force situation, and that plaintiff has demonstrated a *prima facie* case, plaintiff can still lose at the summary judgment level. *See Cone v. Longmont United Hosp. Assoc.*, 14 F.3d 526, 530 n.2 (10th Cir. 1994) (in age discrimination case, noting elements of *prima*

*facie* are "flexible and are not to be applied rigidly. . . . It is appropriate for [the court] to continue with the burden shifting analysis and resolve this case on another prong of the test"). The burden shifts to defendants to articulate a legitimate nondiscriminatory reason for Mr. Hare's discharge, and they will prevail unless plaintiff can show that a genuine dispute of material fact exists as to whether defendants' articulated reason was pretextual, and in fact unlawful discrimination motivated the discharge.

Defendants' burden to articulate a nondiscriminatory reason for discharge is light. *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1279 (10th Cir.), *cert. denied*, 528 U.S. 814 (1999); *see also Johnson v. Potter*, 156 Fed. Appx. 61, 63 (10th Cir., Nov. 23, 2005). Here, defendants list and provide evidence supporting several legitimate reasons for Mr. Hare's termination, including Mr. Hare's lack of involvement in the overall management of the Mart (Cook Dep. at 268:4-18), his loose hours (*id.* at 269:4-10); and the conclusion that his position was no longer necessary in light of the actual work he was doing (*id.* at 284:3-5). Defendants also point to plaintiff's insubordination in paying the bonuses in 2002 and violation of company policy in cashing out vacation accrual. *See* Defs.' S.J. Br. at 18 (citing to Hare Dep.). Finally, defendants offer unrefuted deposition testimony indicating that plaintiff's resignation of his corporate duties for the various Mart entities left them "confused" as to Mr. Hare's intentions and whether he would soon leave his position as General Manager of the Mart as well. Cook Dep. at 256:6-22; 258:22-259:10.

The burden now shifts back to Mr. Hare to show that defendants' offered reasons are pretextual. As plaintiff accurately explains, "[p]retext is established by

proof that a 'discriminatory reason' more likely motivated the employer or that the employer's proffered explanation is 'unworthy of credence.'" Pl.'s Resp. at 17 (relying upon *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1455 (10th Cir. 1994)). Plaintiff contends that defendants' various justifications were concocted after the fact, and thus a jury could find that the real reason for the termination was discrimination. *Id.* at 19. Further, plaintiff characterizes the "ageist" remarks by Mr. Phillips–asking about plaintiff's age and instructing him to groom a younger employee for succession–as creating "as close a case for a *Plaintiff's* summary judgment on the issue as any case undersigned counsel can recall." Pl.'s Resp. at 20 (emphasis in original).

This Court does not agree. Inquiries into an employee's future plans are legitimate and lawful and do not necessarily show pretext on the part of an employer. *See Colosi v. Electri-Flex Co.*, 965 F.2d 500, 502 (7th Cir. 1992) (no inference of age discrimination where boss twice asked when plaintiff was planning to retire and both times plaintiff replied "never") (cited for same proposition by *Adamson v. Multi Community Diversified Servs., Inc.*, 2005 WL 3682144 at *3 (D. Kan. 2005) and *Holdren v. General Motors Corp.*, 1998 WL 990997 at *4 (D. Kan. 1998)). This is particularly true where the employee has been with the company for 30 years, as has Mr. Hare, who admitted that continuity in management of the Mart was important. *See* Hare Dep. at 123:17-124:4; 124:25-125:1-9. The single inquiry does not indicate a belief on the part of Mr. Phillips that Mr. Hare's age should be a factor in his continued employment, but rather indicates a legitimate inquiry into the future of the Mart and its management. *See also* Phillips Dep. at 65:6-67:14 (explaining that the knowledge that

Mr. Klein was planning to retire coupled with the fact that Mr. Hare had been at the Mart for so long led Mr. Phillips to inquire about Mr. Hare's age and retirement plans). A reasonable jury would not find that the reasons stated for discharge were merely pretext for age discrimination based on this single inquiry, especially where the plaintiff was not actually replaced by a younger worker but rather the position was eliminated. Plaintiff cannot show the required nexus between the allegedly discriminatory statement and the termination decision where Mr. Phillips requested Mr. Hare to find a "younger" replacement to groom for succession but defendants chose to eliminate the position altogether.

Plaintiff argues that the comments at issue were followed by an "immediately subsequent campaign to get rid of Hare." Pl.'s Resp. at 22. However, the evidence fails to establish any such campaign. Rather, it was Mr. Hare who resigned his corporate positions almost immediately following the December 2002 meeting in Dallas. Mr. Cook then traveled to Denver to inform Mr. Hare and the Mart employees that "we stood behind Mr. Hare and wanted to see to the continued successful management of the Mart by Mr. Hare; and that the employee group should be confident that we were going to work with Mr. Hare to come to a solution to all of this." Cook Dep. at 260:24-261:9. Mr. Cook testified that the Dallas management was very concerned after Mr. Hare's resignation of his corporate duties because "he was probably anticipating resigning altogether very shortly." *Id.* at 258:23-25. Therefore, "it became more than apparent that we in Dallas needed to spend more time focusing on the Mart, because [Mr. Klein's and Mr. Hare's resignations] constituted a major shakeup in the

-11-

management of the Mart," *id.* at 258:14-17, and it was due to this increased focus that Mr. Hare's alleged ineffectiveness became apparent.

Plaintiff also claims that defendants "immediately" reduced his compensation following the December 2002 meeting–further evidence of an "immediate and fierce" campaign to get rid of Mr. Hare. Pl.'s Resp. at 23. However, the evidence shows that his base compensation remained the same, but the new bonus structure, first mentioned in December 2001 and presented again at the December 2002 meeting, was finally implemented. *See* Ex. 24, attached to Pl.'s Resp. Defendants also point out that Mr. Hare's 2002 total compensation included $46,500 in vacation payouts which were contrary to company policy. *See id.*; Ex. M, attached to Defs.' Reply; Hare Dep. at 99:9-100:22. The bonus reduction, which was first communicated to plaintiff approximately one year prior to the allegedly ageist comments by Mr. Phillips, does not evidence an "immediate and fierce" campaign to get rid of Mr. Hare and Mr. Hare presents no evidence connecting the bonus reduction to the comments by Mr. Phillips.

Plaintiff further argues that defendants' "shifting, inconsistent, implausible defenses provide evidence of pretext." Pl.'s Resp. at 27. The Court agrees that defendants' depositions indicate varying descriptions of who was the real decision maker. *See* Cook Dep. at 134:17-135:10 (describing Mr. Phillips as the ultimate decision maker); Phillips Dep. at 8:2-7 (denying participation in any decision making). Additionally, Mr. Phillips's description of Mr. Hare as voluntarily resigning from his operational duties rather than being terminated is troubling and not borne out by the evidence. *See* Phillips Dep. at 128:2-130:8. However, these inconsistencies do not

support an inference that defendants were motivated by age animus in terminating Mr. Hare. Plaintiff has still not shown the required nexus between the age inquiry at the December 2002 meeting and his firing twelve months later in December 2003. Without such a nexus, Mr. Phillips's comments are mere stray comments that are not sufficient to create a jury issue in an ADEA case. *See Cone*, 14 F.3d at 531 (comments to plaintiff that the hospital needs "new young blood" and that "long-term employees have a diminishing return" are "stray remarks" insufficient to create a jury issue) (citing *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir.), *cert. denied*, 510 U.S. 861 (1993) for the proposition that although age-related comments referring directly to the worker may support an inference of age discrimination, isolated and ambiguous comments from nearly a year prior to layoff did not show pretext); *MacDonald v. E. Wyo. Mental Health Ctr.*, 941 F.2d 1115, 1122 (10th Cir. 1991) ("While the MacDonalds may have created a genuine issue as to whether the proffered reasons were the real reasons for their discharge, they have offered no credible evidence that the real reason was age discrimination."); *see also Manning v. McGraw-Hill, Inc.*, 216 F.3d 1087 at *4 (10th Cir., June 13, 2000) (Table) (vacating jury verdict and granting defendant's motion for judgment as a matter of law where plaintiff failed to prove nexus between alleged ageist statements and the decision to fire him).

Plaintiff points to additional reasons for finding pretext on these facts, but none are sufficient to raise a genuine issue of material fact. Plaintiff cites his long successful tenure with the Mart, but such evidence goes to creating a *prima facie* case and not raising an issue of pretext. *See English v. Colo. Dept. of Corrections*, 248 F.3d 1002,

1008 (10th Cir. 2001) (a plaintiff can meet the *prima facie* burden by showing an "extensive period of time that [plaintiff] held his position"); *MacDonald*, 941 F.2d at 1121 ("[A] plaintiff may make out a *prima facie* case of discrimination in a discharge case . . . by evidence that she had held her position for a significant period of time."); *see also Manning*, 216 F.3d at *5 ("Pretext is not established by virtue of the fact that an employee has received some favorable comments in some categories or has, in the past, received some good evaluations.") (internal quotations omitted).  Additionally, defendants' failure to pay severance or engage in progressive discipline with plaintiff does not suggest pretext or age animus, nor does use of subjective criteria in terminating Mr. Hare, especially under these circumstances where it is undisputed that Mr. Hare resigned his corporate duties following a dispute with management and admitted to violating company policy as far as payroll advances and vacation payouts.

Thus, assuming that plaintiff had presented a *prima facie* case, he has failed to overcome defendants' articulated legitimate, nondiscriminatory reasons for his termination by showing that they were pretextual and that defendants were actually motivated by age bias.  *See Cone*, 14 F.3d at 530 ("Even though all doubts must be resolved in [plaintiff's] favor, allegations alone will not defeat summary judgment.").  Therefore, summary judgment on plaintiff's ADEA claim is granted.  *See id.* at 533 ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249-50).

## B. Wrongful Discharge Claim

Mr. Hare contends that his termination violated Colorado common law, which prohibits an employer from discharging an employee in violation of public policy. Pl.'s Resp. at 1. Specifically, he claims that the instructions not to pay bonuses to Mart employees in 2002 violated the Colorado Wage Act ("CWA"), C.R.S. § 8-4-101 *et seq.*, and that he was fired for refusing to follow such an illegal directive. In order to survive summary judgment on this claim, Mr. Hare acknowledges that he must present evidence that (1) his employer directed him to perform an illegal act as part of his work related duties; (2) the act directed by his employer would violate a specific statute relating to public health, safety or welfare; (3) he was terminated as a result of refusing to perform the act directed; and (4) his employer was aware or reasonably should have been aware that Mr. Hare's refusal to comply with the directive was based on his reasonable belief that the act was illegal, contrary to clearly expressed statutory policy relating to Mr. Hare's duty as a citizen, or violative of Mr. Hare's legal right or privilege as a worker. *See* Pl.'s Resp. at 28-29; *see also Roe v. Cheyenne Mt. Conf. Resort*, 124 F.3d 1221, 1235 (10th Cir. 1997) (citing *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 109 (Colo. 1992)).

Assuming *arguendo* that the directive by Mr. Cook not to pay 2002 bonuses, first given to Mr. Hare via Mr. Klein in December 2001, would violate a specific statute relating to public health, safety or welfare, and assuming *arguendo* that defendants knew or reasonably should have known that Mr. Hare refused to comply because of his belief that the directive was illegal, Mr. Hare must still prove that his termination in

December of 2003 was a result of his refusal.  Here, 20 months passed between Mr. Hare's most recent assertion in April 2002 that not paying the bonuses would violate the CWA and his termination in December 2003.  Although temporal proximity may support a causal inference in certain situations, the passage of time in this case between Mr. Hare's refusal and his termination cannot support such an inference.  *See Miller v. Auto. Club of N.M., Inc.*, 420 F.3d 1098, 1121 (10th Cir. 2005) (six-month window between protected activity and adverse action insufficient to satisfy causal connection; "unless the [adverse action] is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond mere temporal proximity to establish causation") (internal quotations omitted, brackets and emphasis in original).  Therefore, plaintiff must provide additional evidence to support a causal inference.

Plaintiff points to testimony of Michael Lane, a Human Resources executive with the Dallas management operations, to support his contention that his termination was a result of his refusal to not pay the 2002 bonuses.  *See* Pl.'s Resp. at 30-31 (citing Lane Dep.).  Plaintiff claims Mr. Lane's testimony shows that the refusal to not pay bonuses "was the only operational issue that was in dispute relevant to Hare's termination" (Pl.'s Resp. at 31, emphasis in original) and that letters memorializing the dispute were "the *only* documents that were discussed in the termination process" (Pl.'s Resp. at 30, emphasis in original).

This is a mischaracterization of Mr. Lane's testimony.  Rather, he states that "there was no written document to terminate Darrell Hare for eliminating the job" (Lane

Dep. at 33:5-6) and that he was involved with Mr. Hare's termination "to make sure that it was all right to eliminate the position without any consequences" (Lane Dep. at 32:13-15). Deposition questions regarding the bonus issue indicate that Mr. Lane did not have any involvement in any discussion about the bonus dispute, and bonus documents were provided "FYI" only. *See* Lane Dep. at 34:15-35:24; 40:1-22. Mr. Hare points to no other evidence to support his contention that he was fired as a result of refusing to not pay the bonuses. *See* Pl.'s Resp. at *also* Hare Dep. at 61:21-62:21 (describing the lack of consequences for paying out the bonuses in violation of Mr. Cook's directive).

Plaintiff also claims that Mr. Phillips's testimony supports his contention that termination resulted from a refusal to not pay bonuses. Pl.'s Resp. at 31, citing to Phillips Dep. at 13:10-24. However, the testimony cited instead merely sets forth the generalized issues, unrelated to bonsues, that led to the elimination of Mr. Hare's position:

> Well, the Mart was–for two or three years, was fairly stagnant. It had not shown any growth in net operating income. There was concerns about that. There was concerns about the controls at the Mart. Concerns about employee dissatisfaction with Mr. Hare. There was concerns about insubordinate attitude, disagreeable attitude with the upper management of the company that owned the Mart. Not being cooperative, not working very much.

Phillips Dep. at 13:15-24. Without some evidence connecting these comments to the specific bonus dispute between Mr. Cook and Mr. Hare, this testimony is insufficient to raise a genuine issue of material fact on the causal link between the bonuses and termination. *See also* Hare Dep. at 61:2-62:21 (explaining the lack of repercussions for

releasing the checks in violation of Mr. Cook's original directive).

The Court also notes without deciding that the instruction in 2001 to not pay 2002 bonuses in accordance with the current system, but instead to implement a new bonus structure, is quite possibly not a violation of the CWA at all.  Because of the determination that plaintiff has failed to meet his burden of showing a causal link between his refusal and his termination, a decision on this issue is unnecessary.

## IV.  CONCLUSION

For the reasons stated above, the Court hereby GRANTS Defendants' Motion for Summary Judgment (Dkt. # 72).  The Clerk of the Court is directed to enter judgment for the defendants, and all remaining pending motions are DENIED as moot.

DATED: May 30, 2006

BY THE COURT:

*s: Phillip S. Figa*

_____
Phillip S. Figa
United States District Judge